IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHAD E. LEWIS,

        Plaintiff,

vs.                                  Case No. 13-1266-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but
cannot, considering their age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one,
the agency will find non-disability unless the claimant can show
that he or she is not working at a "substantial gainful
activity."  At step two, the agency will find non-disability
unless the claimant shows that he or she has a "severe
impairment," which is defined as any "impairment or combination
of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  At
step three, the agency determines whether the impairment which
enabled the claimant to survive step two is on the list of
impairments presumed severe enough to render one disabled.  If
the claimant's impairment does not meet or equal a listed
impairment, the inquiry proceeds to step four, at which the
agency assesses whether the claimant can do his or her previous
work; unless the claimant shows that he or she cannot perform
their previous work, they are determined not to be disabled.  If
the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 27, 2012, administrative law judge (ALJ) Timothy J. Christensen issued his decision (R. at 14-23). Plaintiff alleges that he had been disabled since February 26, 2010 (R. at 14). Plaintiff meets the insured status requirements for social security disability benefits through March 31, 2010 (R. at 16).

4

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments:  congestive heart failure, coronary artery disease, hypertension, asthma, status post-surgery for a left ankle fracture, and right knee disorder (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17-19).  After determining plaintiff's RFC (R. at 19), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 21).  At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 21-22).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22-23).

**III.  Did the ALJ err in his RFC findings, including his assessment of the medical opinion evidence?**

The ALJ found that plaintiff can perform sedentary work. Plaintiff must be able to "exercise a sit/stand option," he cannot be required to operate foot controls, he must avoid concentrated exposure to extreme temperatures, wetness, humidity, and respiratory irritants, he cannot climb ladders, ropes or scaffolds, and he can only occasionally climb ramps and stairs (R. at 19).

Dr. Shaheen, a treating physician, wrote in September 2011 that plaintiff has severe congestive heart failure, class III, and can't do physical work (R. at 311). The ALJ found that Dr. Shaheen's statement did not provide sufficient explanation for a determination that plaintiff cannot perform sedentary work, and that his medical notes do not support such a finding. The ALJ noted that his only opinion was regarding the ultimate issue of disability, a matter which is reserved to the Commissioner (R. at 20).

The only opinion of Dr. Shaheen is on the ultimate issue of whether plaintiff is disabled, i.e., whether plaintiff can work. Dr. Shaheen provided no opinion regarding any physical or mental limitations for the plaintiff. The court finds no error by the ALJ in giving little weight to a conclusory opinion on the ultimate issue of disability. Treating source opinions on issues that are reserved to the Commissioner, including whether a claimant is disabled, should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183 at *2-3. See Franklin v. Astrue, 450 Fed. Appx. 782, 785 (10th Cir. Dec. 16, 2011)(court held that other than conclusory statement of total disability, the doctor did not express any opinion concerning claimant's physical or mental capabilities; ALJ discounted opinion because it was unsupported by medical records

and invaded the ultimate issue of disability which is reserved to Commissioner; the court concluded that the ALJ decision to give medical opinion little weight was supported by substantial evidence).

Plaintiff argues that the ALJ should have recontacted Dr. Shaheen for clarification (Doc. 11 at 10). However, under the regulations, effective March 26, 2012, it states that when the evidence is insufficient to determine if a claimant is disabled, the ALJ may take a number of options, one of which is that the ALJ "may" recontact the treating source. 20 C.F.R. 404.1520b(c); 77 FR 10651. The ALJ did not find the evidence to be insufficient to determine disability, but relied on other opinions, including those of Dr. Warren and Dr. Rosch, to determine plaintiff's RFC (R. at 20-21). On the facts of this case, the court finds that the ALJ did not err by failing to recontact Dr. Shaheen.

Plaintiff also alleges the ALJ erred by failing to consider the opinion of Dr. Henderson that plaintiff had mild difficulty with heel and toe walking and mild difficulty squatting and arising from the sitting position, and a limited range of motion in the right knee and left ankle (R. at 298-299). Plaintiff alleges that these findings should have been reflected in postural or other functional limitations (Doc. 11 at 12).

As plaintiff concedes, Dr. Henderson did not offer any
specific functional limitations (Doc. 11 at 12).  The ALJ
discussed the opinions of Dr. Henderson and accorded "partial"
weight to his opinions (R. at 20).  The ALJ also considered the
physical RFC assessment of Dr. Rosch, who reviewed and discussed
the consultative evaluation by Dr. Henderson (R. at 306).  The
ALJ gave the opinion of Dr. Rosch some weight, but found that
plaintiff was more limited than indicated by Dr. Rosch (R. at
20-21).

The ALJ also gave some weight to the opinion of Dr. Warren,
who also prepared a state agency RFC assessment (R. at 69-71).
Dr. Warren reviewed the opinion of Dr. Klaumann, who opined that
plaintiff is able to walk without a limp, has pain-free range of
motion, and may return to all regular activities (R. at 283).
Dr. Warren also reviewed the evaluation by Dr. Henderson (R. at
71).  The ALJ found that plaintiff was more limited than Dr.
Warren indicated (R. at 20-21).

Thus, the ALJ's RFC findings relied on assessments by Dr.
Warren and Dr. Rosch.  These two physicians reviewed the
examination findings by Dr. Klaumann and Dr. Henderson in
formulating their RFC findings.  Dr. Rosch opined that plaintiff
had postural limitations related to climbing (R. at 303),
limitations which were included in the ALJ's RFC findings (R. at
19).  There is no medical opinion evidence that plaintiff has

postural or other functional limitations not reflected in the ALJ's RFC findings. On these facts, the court finds no error in the ALJ's consideration of the assessment by Dr. Henderson in making his RFC findings.

Dr. Rosch opined that plaintiff should avoid concentrated exposure to hazards (R. at 304). This finding was not included in the ALJ's RFC findings. However, few occupations in the unskilled sedentary base require work in environments with hazards. Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base. SSR 96-9p, 1996 WL 374185 at *9. Therefore, the court finds that the failure to include this limitation is harmless error.

In his RFC findings, the ALJ also limited plaintiff as follows: "claimant must be able to exercise a sit/stand option" (R. at 19). This sit/stand option was presented to the vocational expert (VE), who testified:

> …as long as the sit/stand option did not interfere with his ability to stay on task, then these jobs would still exist in these numbers."

(R. at 48). Plaintiff argues that the ALJ erred by failing to specify with what frequency plaintiff would need to alternate sitting and standing (Doc. 11 at 15).

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work.  On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.**  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

SSR 83-12 discusses the use of the medical-vocational rules as a framework for adjudicating claims in which an individual has only exertional limitations within a range of work or between ranges of work.  One special situation covered in SSR 83-12 is the need to alternate between sitting and standing.  It states as follows:

> **In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and**

**standing**. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. **Such an individual is not functionally capable of doing** either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or **the prolonged standing or walking contemplated for most light work**. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. **However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task**. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253 at *4 (emphasis added).

In the case of <u>Armer v. Apfel</u>, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. June 9, 2000), the ALJ found that the claimant was limited to unskilled sedentary work that would allow him to "change positions from time to time."  2000 WL 743680 at *2.  The court cited to the language quoted above in SSR 96-9p and held that the ALJ's finding that the claimant

would have to change positions from time to time was vague and
did not comply with SSR 96-9p.  The court held that the RFC
assessment must be specific as to the frequency of the
individual's need to alternate sitting and standing because the
extent of the erosion of the occupational base will depend on
the facts in the case record, such as the frequency of the need
to alternate sitting and standing and the length of time needed
to stand.  The ALJ's findings also must be specific because the
hypothetical questions submitted to the vocational expert (VE)
must state the claimant's impairments with precision.  Id. at
*2-3.

     In the case of <u>Vail v. Barnhart</u>, 84 Fed. Appx. 1, 2-3 (10th
Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting
plaintiff to light work which included a limitation to allow
plaintiff brief changes of position (alternating sitting and
standing).  The court stated as follows:

> Furthermore, if an ALJ finds that a claimant
> cannot perform the full range of work in a
> particular exertional category, an ALJ's
> description of his findings in his
> hypothetical and in his written decision
> must be particularly precise. For example,
> according to one of the agency's own rulings
> on sedentary labor, the description of an
> RFC in cases in which a claimant can perform
> less than the full range of work "must be
> specific as to the frequency of the
> individual's need to alternate sitting and
> standing." Social Security Ruling 96-9P,
> 1996 WL 374185 (S.S.A.) at *7. **Precisely how
> long a claimant can sit without a change in**

> **position is also relevant to assumptions
> whether he can perform light work.** 20 C.F.R.
> § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added).  The court then held

that the ALJ made a critical omission in his analysis by not

properly defining how often the claimant would need to change

positions.  84 Fed. Appx. at *5.

Finally, in Maynard v. Astrue, 276 Fed. Appx. 726, 731

(10th Cir. Feb. 16, 2007), the ALJ indicated to the VE that the

claimant needed a sit/stand option.  After quoting the language

of SSR 96-9p, the court held:

> The ALJ's hypothetical does not comply with
> the emphasized language in the foregoing
> quotation because it provided no specifics
> to the VE concerning the frequency of any
> need Mr. Maynard may have to alternate
> sitting and standing and the length of time
> needed to stand. The RFC in the ALJ's
> hypothetical is therefore flawed as it
> pertains to a sit-stand option, and the VE's
> response is not a reliable basis for
> analyzing the erosion of the unskilled
> sedentary occupational base or the total
> number of jobs Mr. Maynard can perform... .

As the above cases indicate, language to change position

from time to time (Armer), or brief changes of position

(alternating sitting and standing) (Vail), or a sit/stand option

(Maynard) fail to specifically indicate the frequency of the

claimant's need to alternate sitting and standing.  The

regulations and case law clearly indicate that a limitation of a

sit/stand option is not specific as to the frequency of an

individual's need to alternate sitting and standing.  The VE testified that the jobs identified would still exist as long as the sit/stand option did not interfere with the ability to stay on task.  However, because the ALJ failed to identify the frequency of plaintiff's need to alternate sitting and standing, it cannot be determined if the sit/stand option would interfere with the ability to stay on task.  This case shall therefore be remanded in order for the ALJ to be specific as to the frequency of the individual's need to alternate sitting and standing.

**IV.  Did the ALJ err in his step three findings regarding listed impairment 4.02?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

Listed impairment 4.02 (chronic heart failure) requires the medically documented presence of an ejection fraction of 30 percent or less.  It must also result in persistent symptoms of heart failure which very seriously limit the ability to

14

independently initiate, sustain, or complete activities of daily living.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 486).

The ALJ found that plaintiff had ejection fraction levels between 40-60% (R. at 18).  However, plaintiff has provided a statement from Dr. Shaheen that his ejection fraction levels were between 20-30% in 2011 (R. at 452).  On remand, the ALJ shall reconsider the medical evidence regarding the fraction levels.

The ALJ also found that plaintiff's activity levels were above the listing requirements (R. at 18).  The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  However, the court would note that the ALJ did not mention that Dr. Shaheen classified plaintiff as having class III congestive heart failure (R. at 311).  Plaintiff, in his brief, provides a definition for class III indicating a marked limitation of daily activity (Doc. 11 at 9, n.2).  Because this case is being remanded, on remand, the ALJ will review the evidence pertaining to the listed impairment 4.02, including fraction levels, and activities of daily living.  The ALJ shall consider the implications of a diagnosis of class III congestive heart failure.

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed and remanded pursuant to sentence four
of 42 U.S.C. § 405(g) for further proceedings consistent with
this memorandum and order.

Dated this 23rd day of September 2014, Topeka, Kansas.


                              s/Sam A. Crow
                              Sam A. Crow, U.S. District Senior Judge